**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

|  |  |  |
|---|---|---|
| **JTH TAX, INC. d/b/a LIBERTY TAX SERVICE,** | : | |
| | : | |
| | : | |
| | : | |
| **Plaintiff,** | : | **Case No: 2:18-cv-** _75_ |
| **v.** | : | |
| | : | |
| **KESHA D. TAPP** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT

Plaintiffs JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty"), by counsel, for its Complaint against Defendant Kesha D. Tapp ("Tapp"), states as follows:

## PARTIES

1.      JTH is a Delaware corporation with its principal place of business at 1716 Corporate Landing Parkway, Virginia Beach, Virginia.

2.      Tapp is an individual citizen of the State of Georgia.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over Tapp because, among other things, she consented to personal jurisdiction in this Court. Tapp is the maker of a promissory note (the "Note") (attached as **Exhibit 1**) and a party to a franchise agreement for the ownership and/or operation of a Liberty franchise location (the "Franchise Agreement") (attached as **Exhibit 2**). The Note provides that Tapp "irrevocably and unconditionally consents to venue and personal jurisdiction in the state and federal court located in or most proximate to the city or county of Liberty's National Office, presently . . . the United States District Court in Norfolk, Virginia."

Note, at page 3. The Franchise Agreement provides that "[i]n any suit brought by any or all Liberty Parties, that in any way relates to or arises out of this Agreement . . . you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office (presently . . . the United States District Court in Norfolk, Virginia) . . . ." Franchise Agreement, Section 17(b). In addition, the Note and fees under the Franchise Agreement were and are payable in Virginia Beach, Virginia.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between Liberty (a citizen of Virginia and Delaware) and Tapp (a citizen of Georgia), and the amount in controversy exceeds the sum of $75,000, including the valuation of Liberty's equitable claims which are measured by the value of the object of the litigation, exclusive of interest and costs.

5.      Venue is proper in this Court, pursuant to 28 U.S.C. §§ 1391(a)(1) and (2) because of the parties' reasonable forum selection clause identified above and because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of Virginia, Norfolk Division, including Tapp's failure to make payment payable in Virginia Beach, Virginia.

## FACTUAL BACKGROUND

### Introduction

6.      Liberty is a franchisor of Liberty Tax Service income tax preparation service centers located throughout the United States.

7.      Liberty grants licenses to franchisees to use certain federally registered trademarks (the "Marks") and participate in its confidential and proprietary business system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Liberty's valuable trade secrets, reputation, goodwill, and other legitimate business interests.

8.      As a result of these efforts and expenditures, Liberty has become associated in the minds of consumers with uniform goods and services of consistently high quality, provided only by persons following Liberty's approved sales, operating methods and procedures.

9.      Liberty has used the Marks, along with the efforts of its hardworking employees, to grow from five offices in 1998 to approximately 4,000 today.

10.     Liberty has grown to be one of the largest tax preparation franchises in the United States.

**The Franchise**

11.     Tapp is a former franchisee of Liberty pursuant to the Franchise Agreement. Tapp owned and/or operated a franchise in Georgia known as GA-1 (the "Franchise").

12.     Liberty provided Tapp with training in franchise operation, marketing, advertising, sales, and business systems. Tapp also received confidential operating, marketing, and advertising materials, which are not available to the public or to anyone who is not part of Liberty's business system.

**The Note**

13.     Tapp is the sole maker of the Note.

14.     Tapp executed the Note payable to the order of Liberty in the original principal amount of $80,974.00, on October 3, 2016. *See* Ex. 1.

15.     The Note required the following payments to Liberty: $26,991.33 plus interest on February 28, 2017; $26,991.33 plus interest on February 28, 2018; and $26,991.34 plus all remaining interest on February 28, 2019.

16.     In the Note, Tapp agreed "to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of this Note . . . ." *Id.*

17.     Under the Note, termination of the Franchise Agreement constitutes an event of default, whereupon "the entire unpaid balance and all accrued interest shall become immediately due and payable . . . ." *Id*.

18.     The Note provides that interest shall accrue at a rate of 12% per annum. *Id*.

19.     As of November 1, 2017, the total amount due and owing to Liberty under the Note was $73,456.47, while interest continues to accrue.

**The Franchise Agreement**

20.     The Franchise Agreement governed Tapp's ownership and operation of the Franchise.

21.     Pursuant to Section 4 of the Franchise Agreements, Tapp agreed to pay Liberty royalties based upon the Franchise's gross receipts. Additionally, pursuant to Section 7 of the Franchise Agreement, Tapp agreed to provide a gross receipt report to Liberty on the fifth day of each month.

22.     Section 6(e) of the Franchise Agreement provides that Tapp "agree[d] to exercise [her] best efforts to promote the Franchised Business and agree[d], at a minimum, to be open for business during the hours specified in the Operations Manual."

23.     Pursuant to Sections 8(b)(xi) of the Franchise Agreement, Liberty could terminate the Franchise Agreement without notice or opportunity to cure in the event that Tapp "commit[ed] three (3) or more breaches of this Agreement, the Operations Manual, or any other agreement (including promissory notes) with Liberty, in any twelve (12) month period regardless of whether such breaches were cured after notice."

24.     Additionally, pursuant to Sections 8(c)(i) and 8(c)(ii) of the Franchise Agreements, grounds for termination, upon seven (7) days' notice and opportunity to cure, included, among

other things, violation of any term of the Franchise Agreement, any other Agreement with Liberty, or the Operations Manual, and failure to pay amounts owing that are more than thirty (30) days past due.

25.    Section 9 of the Franchise Agreement sets forth Tapp's post-termination obligations which include, among other things, the obligation to: assign all phone numbers used in connection with her operation of the Franchise to Liberty; pay to Liberty all debts due and owing; deliver to Liberty all customer lists, tax returns, files, and records; return Liberty's confidential operations manual; and adhere to the Franchise Agreements' post-termination non-competition and non-solicitation covenants.

26.    Pursuant to Section 10(b) of the Franchise Agreement, Tapp agreed "not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns, or offer Financial Products, within the Territory or within twenty-five (25) miles of the boundaries of the Territory . . ." for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchise (the "Non-Compete").

27.    Pursuant to Section 10(d) of the Franchise Agreement, Tapp agreed that she "will not, within the Territory or within twenty-five (25) miles of the boundaries of the Territory, directly or indirectly solicit any person or entity served by any of your prior Liberty offices within the last twelve (12) months . . . for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing, or Financial Products . . . ." for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchise (the "Non-Solicit").

28.    Tapp also agreed pursuant to Section 10(h) of the Franchise Agreement "that the provisions of Section 10 are reasonable, valid and not contrary to the public interest." To that end, Tapp agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed

that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10."

29.    Pursuant to Section 17(a) of the Franchise Agreement, Tapp agreed and acknowledged that Virginia law governs "all claims that in any way relate to or arise out of" the Franchise Agreement.

**Termination**

30.    On July 17, 2017, Liberty sent four letters (the "Notices to Cure Default") to Tapp notifying her of her various breaches of the Franchise Agreement including, among other things, her failure to maintain off-season required business hours of eight (8) hours per week; her failure to pay monies owed to Liberty; her failure to respond to and resolve customer service opportunities; and her failure to maintain an office telephone number and/or answering machine. A true and accurate copy of the four Notices to Cure Default are attached together as **Exhibit 3**.

31.    On November 2, 2017, after providing the requisite notice and opportunity to cure, Liberty, by letter, terminated the Franchise Agreement, as a result of Tapp's violations of Sections 8(b)(xi), 8(c)(i), and 8(c)(ii). A true and accurate copy of the letter dated November 2, 2017 (the "Termination Notice") is attached as **Exhibit 4**.

32.    The Termination Notice reminded Tapp of her post-termination obligations, including but not limited to her obligations to pay all amounts due and owing to Liberty, to surrender all client files, to assign the phone numbers used by and associated with the Franchise and to comply with the Non-Compete following the termination of the Franchise Agreement. *Id.*

**Post-Termination Breaches of the Franchise Agreement**

**Failure to Pay Accounts Receivable**

33.     Upon termination of the Franchise Agreement, Tapp promised to "[p]ay to Liberty all amounts owing to Liberty . . . ." Section 9(d).

34.     At the time of termination, Tapp owed to Liberty $18,636.45 in royalties, fees, and related obligations under Section 4 of the Franchise Agreement, in addition to her obligation on the Note.

35.     Tapp has failed to pay to Liberty any amounts owing.

36.     Tapp has breached her post-termination obligations under the Franchise Agreement.

37.     Liberty has been damaged as a proximate result.

**Violation of the Non-Compete and the Non-Solicit**

38.     Upon information and belief, Tapp has prepared tax returns within 25 miles of the Territory as defined in the Franchise Agreement since the termination of the Franchise Agreement.

39.     Specifically, upon information and belief, Tapp has worked independently and/or in conjunction with Coosa Valley Financial Group in or around Summerville, Georgia, preparing, or aiding in preparing tax returns, for a fee or charge.

40.     On or about January 30, 2018, Tapp published a Facebook post on her own Facebook page, directed at law enforcement personnel, stating: "If you haven't filed your taxes yet, come let our amazing team at Coosa Valley Financial file your taxes for FREE! . . . Our office is open and ready to serve you!" A screenshot of the post is below:



41.    On or about January 21, 2018, Tapp was tagged in a Facebook post by Alexia Marie McGuire stating, in pertinent part, "GO FILE OR ATLEAST [sic] START YOUR TAXES & GET $60 FREE CASH JUST FOR FILING then start referring people . . . They 'Coosa Valley Financial Group & Tax Services' are located in town between State Farm & Vison Gallery ! Kesha Tapp & Angela G Johnson will take good care of you here & help you out a lot . . . ." A screenshot of the post is below:



42.      The Summerville office of Coosa Valley Financial Group is within twenty-five

miles of Tapp's Territory, as defined in the Franchise Agreement, and hence upon information and

belief, these posts, directly or indirectly, solicited some persons or entities served by Tapp's

Franchise within the last twelve (12) months.

## COUNT 1 – The Note

43.      Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

44.      The Note is a valid and enforceable negotiable instrument and contract that Tapp

executed and delivered in favor of Liberty in the original principal amount of $80,974.00. *See*

Exhibit 1.

45.     The Note obligated Tapp to timely pay Liberty all amounts due as set-forth in said Note.

46.     Tapp has defaulted under the Note and is in breach of her obligations under the Note, as Tapp has failed to make payments as required under the Note that are now due and owing Liberty.

47.     Liberty has been damaged as a result.

48.     As of November 1, 2017, the total amount due and owing to Liberty under the Note was $73,456.47, while interest continues to accrue.

## COUNT 2 – Breach of Contract for Failure to Pay Amounts Due to Liberty

49.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

50.     The Franchise Agreement is a valid and enforceable contract.

51.     Liberty has performed all obligations and conditions required of it in the Franchise Agreement.

52.     Tapp entered into the Franchise Agreement individually as a sole proprietor.

53.     In the Franchise Agreement, Tapp agreed, among other things, to timely pay to Liberty the fees outlined in Section 4.

54.     Tapp has breached the Franchise Agreement by, among other things, failing to pay the fees in Section 4 to Liberty as they became due in accordance with the terms of the Franchise Agreement.

55.     Liberty has been damaged as a result.

56.     Tapp is liable to Liberty for the total outstanding balance of her unpaid accounts receivable for Section 4 fees under the Franchise Agreement, in the amount of $18,636.45.

## **COUNT 3 – Breach of Contract for Violation of the Non-Compete and the Non-Solicit**

57.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

58.     Under Section 10 of the Franchise Agreement, Tapp agreed that for a two-year period after the termination of the Franchise Agreement she would not directly or indirectly solicit or divert from Liberty or its franchises any person for whom she prepared a tax return or related services at during the last twelve months of the Franchise, for the purposes of rendering services in connection with the preparation of tax returns or performance of related services.

59.     Under Section 10, Tapp further agreed that for a two-year period after termination of the Franchise Agreement, she would not compete with Liberty within 25 miles of her territory. Tapp agreed that the time and geographical restrictions within the Franchise Agreement were fair and reasonable and that Liberty would be entitled to injunctive relief in the event she breached the provisions of Section 10.

60.     The Non-Compete and the Non-Solicit covenants under Section 10 of the Franchise Agreement were necessary to protect Liberty's legitimate, protectable interest in its franchise business, including but not limited to:

     A.     Maintaining and protecting the goodwill and customer loyalty Tapp generated and assisted in the generation of on behalf of Liberty;

     B.     Retaining customer relationships for the provisions of tax services;

     C.     Customer list, customer identification, tax returns, and other confidential and trade secret information;

     D.     Preserving Liberty's ability to sell franchises where Tapp was formerly located.

61.     The Non-Compete and the Non-Solicit covenants under Section 10 of the Franchise Agreement are in all respects reasonable and reasonably necessary to protect Liberty's legitimate business interest.

62.     Upon information and belief, Tapp, individually and acting jointly with, in concert with, or assisted by others, did and has prepared tax returns for a fee or charge within the Territory, as defined in the Franchise Agreement, consisting of the county limits of Chattooga County, Georgia, and within 25 miles of the Territory.

63.     In particular, Tapp has made and been "tagged" in Facebook posts soliciting tax preparation business.

64.     Tapp's Non-Solicit and Non-Compete covenants were a substantial part of the consideration given by her in exchange for the Franchise Agreement.

65.     By preparing tax returns for a fee or charge within the Territory and within 25 miles of the Territory, and by advertising such business on public Facebook pages, Tapp has breached, and upon information and belief, continues to breach the Non-Compete and the Non-Solicit covenants in Section 10 of the Franchise Agreement.

66.     As a result of Tapp's past, present, and future breaches, Liberty has suffered and will continue to suffer actual, substantial, and irreparable damage, including but not limited to:

    A.     Loss of customer goodwill and loyalty;

    B.     Loss of business opportunities and relationships to provide tax preparation services and related services;

    C.     Loss of customers;

    D.     Loss of profits;

    E.     Loss of franchisee stability;

    F.     Loss of ability to sell other franchises;

    G.     Loss of value in confidential business information;

    H.     Loss of competitive advantage at Tapp's former franchise locations;

    I.     Attorney's fees; and

J.    Cost of this action

67.    Further, Liberty has been, and will be, irreparably harmed by Tapp's breach of the Non-Compete and the Non-Solicit. Money damages are difficult to measure and are not an adequate remedy because of the difficulty in measuring past and future losses of customers, damage to the value of Liberty's trade secrets and confidential information, damage to Liberty's goodwill, damage to Liberty's customer loyalty, and damage to Liberty's ability to sell franchises.

68.    Tapp will continue to breach the Non-Compete and Non-Solicit covenants of the Franchise Agreement unless her wrongful conduct is permanently enjoined.

**WHEREFORE**, JTH Tax, Inc. d/b/a Liberty Tax Service respectfully requests that the Court enter judgment in its favor and against Kesha D. Tapp, by an order:

(1) entering judgment in the amount of $92,092.92 on Counts 1 and 2, plus interest at the contracted rate of 12% per annum, *see* Note and Franchise Agreement section 4(h);

(2) awarding Liberty's attorneys' fees pursuant to the Note;

(3) awarding partial liquidated damages for the period of time prior to entry of a permanent injunction, on Count 3, pursuant to Section 10(c) of the Franchise Agreement in an amount to be determined by the fact finder;

(4) entering a permanent injunction barring Tapp from competing or soliciting in violation of Section 10(b) and (d) of the Franchise Agreement through November 2, 2019; and

(5) granting such other relief as the Court deems just and appropriate.

**JTH TAX, INC. D/B/A LIBERTY TAX SERVICE**


By____/s/ *Clark J. Belote*_____
                        Counsel

Stephen E. Story (VSB No. 22685)
Christy L. Murphy (VSB No. 73253)
Clark J. Belote (VSB No. 87310)
Kaufman & Canoles, a professional corporation
150 W. Main Street, Suite 2100
Norfolk, VA 23510
(757) 624-3000
(888) 360-9092 Facsimile
Email: sestory@kaufcan.com
Email: clmurphy@kaufcan.com
Email: cjbelote@kaufcan.com
*Counsel for JTH Tax, Inc. d/b/a Liberty Tax Service*